UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 12-53-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TONY C. MONEY, II and | ) | **MEMORANDUM OPINION** |
| FRANK EMMANUEL SLEDGE, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of the Joint Motion to Suppress Evidence filed on December 21, 2012, by Defendants Tony C. Money, II and Frank Emmanuel Sledge. [Record No. 146] The defendants have also requested an evidentiary hearing on the issues raised in their motion. The defendants' motion was referred to United States Magistrate Judge Hanly A. Ingram pursuant to 28 U.S.C. § 636(b)(1)(B). On January 14, 2013, Magistrate Judge Ingram issues a Recommended Disposition regarding the joint motion. [Record No. 152] The report recommends that the motion be denied without the necessity of a evidentiary hearing.

Neither the moving defendants nor the United States have filed substantive objections to the Magistrate Judge's Recommended Disposition.[1] Notwithstanding that fact, the Court has

---

[1] Although this Court must make a *de novo* determination of those portions of a magistrate judge's recommendations to which objection is made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). A party who fails to file objections to a magistrate judge's proposed findings of fact and recommendation

reviewed the materials filed in support of and in opposition to the joint motion and concludes that it should be denied. Further, the defendants have failed to meet their burden with respect to their request for an evidentiary hearing. Accordingly, that request will also be denied as well.

**I.**

The facts relevant to the defendants' motion are summarized in the United States' response. [Record No. 150] Beginning in May 2012, the Drug Enforcement Administration ("DEA") began utilizing a confidential source ("CS") to make a series of controlled purchases of oxycodone pills from Todd Brock at his Bell County, Kentucky residence. Two additional buys were made from Burl Johnson, an alleged subordinate. Each transaction was recorded using audio and/or video equipment. The final purchase occurred on August 25, 2012.

On August 13, 2012, counsel and the DEA applied for and received an order authorizing interception of wire communications occurring to and from telephone number (606) 664-9746, a residential phone subscribed to and used by Brock at his residence. Actual interception of communications began on August 17, 2012. The wire intercept was subsequently extended through September 29, 2012, after several alleged members of the drug conspiracy were arrested.

As a result of the wire intercepts, several telephone numbers were identified, including:

- (859) 509-4258 (Target Phone No. 1) – a pre-paid cellular telephone subscribed to "Vernon Forest," with a listed address of 3200 Todds Rd., Lexington,

---

waives the right to appeal. *See Wright v. Holbrook*, 794 F.2d 1152, 1154-55 (6th Cir. 1986). Further, a general objection to the entirety of a magistrate judge's report has the same effect as a failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Kentucky. The United States asserts that "Vernon Forest" is believed to be an alias of Defendant Tony Money, II; and

- (313) 505-4305 (Target Phone No. 2) – a cellular telephone subscribed to "Sir Sledge," with a listed address of 24733 Patricia Avenue, Warren, MI.

The United States asserts that these devices and numbers were used by individuals supplying controlled substances to Defendant Brock's drug organization.

Some of the recorded conversations involving one or more of the alleged conspirators are summarized in the government's response to the defendants' motion to suppress. This includes conversations on: (1) August 25, 2012 (call to Brock from Target Phone No. 1) which is believed to involve a discussion concerning the delivery of an unspecified quantity of illegal drugs; (2) August 31, 2012 (call to Brock from Target Phone No. 1) which is believed to involve a discussion concerning finalizing the drug deal discussed by the parties on August 25, 2012, and involving approximately 2,000 oxycodone pills; and (3) September 1, 2012 (call to Brock from Target Phone No. 2) which is believed to involve the drug transaction scheduled for that date.

On September 1, 2012, at approximately 1:45 p.m., law enforcement observed a white, Toyota Rav-4 automobile backed into Brock's driveway. This vehicle left the residence approximately fifteen minutes later. The vehicle displayed a Michigan license plate bearing CCC 9113 and contained three black males. A check of Michigan registration files revealed that the vehicle was a 2012 Toyota Rav-4 registered to Hertz Vehicles LLC, Southfield, Michigan.

After following for some distance, law enforcement officers with the Corbin Police Department developed probable cause to stop the vehicle based on a traffic violation. During

the traffic stop, an officer identified the driver of the vehicle as Juan Marcell Flowers of Detroit, Michigan. The passenger in the front seat was identified as Defendant Frank Emanuel Sledge of Warren, Michigan, while the third occupant in the rear seat identified himself as "John Adams." The Corbin police officer was later able to confirm that the rear-seat occupant was actually Defendant Tony C. Money, II (a/k/a, Vernon Forest).

The telephone toll analysis and subscriber information previously obtained by the government confirmed that Target Phone No. 1 had multiple prior contacts with Defendant Brock *via* the intercepted number. Additionally, subsequent intercepted calls from Target Phone No. 1 indicated that the defendant planned to bring additional quantities of drugs to Brock on or about September 29, 2012. More specifically, on September 25, 2012, Brock received a call from an unidentified male calling from the subject phone which indicated that Brock wanted "two and two" and that the items would be delivered on Saturday, September 29, 2012.

On Friday, September 28, 2012, DEA Task Force Officer Douglas Carmack obtained a warrant from United States Magistrate Judge Mona K. Majzoub in Detroit, Michigan which authorized the DEA to obtain "[a]ny and all information about the location of [Target Phone Nos. 1 and 2] . . ." The request defined location information as "all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as data about which 'cell towers' . . . and 'sectors' . . . received a radio signal from [the Target Phone Nos. 1 and 2]." In preparing and obtaining the warrant, DEA Officer Carmack utilized information obtained from the intercepted wire communications to and from Target Phone Nos. 1 and 2, prior DEA surveillance, and the Corbin Police Department's traffic stop.

The DEA then utilized physical surveillance as well as information from the warrant issued by Magistrate Judge Majzoub to monitor the progress of Target Phone Nos. 1 and 2 as they traveled from Michigan to Kentucky on Saturday, September 29, 2012. During this surveillance, Special Agent Jerel Hughes observed an Audi SUV with Michigan license plates exit Interstate 75 near Corbin, Kentucky. The agent was able to identify Defendant Sledge as an occupant of the vehicle, based on his prior review of the defendant's Michigan operator's license. Hughes alerted Kentucky State Police Sargent Lafe Owens who continued surveillance until the driver was stopped for a traffic infraction. Sargent Owens identified Defendant Money as the driver and Defendant Sledge as a passenger in the vehicle.

During the traffic stop, a narcotics dog made a positive alert for the presence of drugs in the stopped vehicle. As a result, the vehicle was searched. The search revealed approximately 3,000 oxycodone 30 milligram pills, together with a mixture of Xanax pills and methadone, a money-counter, and a handgun located in the rear hatchback compartment of the vehicle. Defendant Money was found to be in possession of Target Phone No. 1 at the time of the arrest while Defendant Sledge possessed Target Phone No. 2.

On October 25, 2012, Defendants Brock, Money, Sledge and several other individuals were named in a multi-count indictment returned by a federal grand jury in this district. The indictment alleges, in part, that these defendants engaged in a conspiracy to distribute oxycodone, methadone, and alprazolam (Xanax) beginning in April 2011, and continuing through on or about September 29, 2012, in violation of 21 U.S.C. §§ 841(a)(1)(A) and 846.

On December 21, 2012, Defendants Sledge and Money filed their joint motion to suppress evidence. According to the defendants, the evidence allegedly connected to them was obtained through illegal searches and seizures pursuant to the September 28, 2012, search warrant issued by United States Magistrate Judge Mona Majzoub in the Eastern District of Michigan. They also contend that: (1) the affidavit used to obtain the September 28, 2012 search warrant was so lacking in probable cause that the good faith exception to the exclusionary rule established in *United States v. Leon,* 468 U.S. 897 (1984), is inapplicable; (2) the warrant was tainted by inclusion of information gathered during wire intercepts authorized by United States District Amul R. Thapar; and (3) information contained in paragraph 14 of the affidavit supporting the September 28, 2012, search warrant contained false information regarding observations made by police during the September 1, 2012, traffic stop. Regarding this last contention, they assert that the affidavit incorrectly identifies Defendant Money as the rear-seat passenger.

Finally, in numerical paragraphs 6 and 7 of their supporting memorandum, the defendants state:

> 6. The defense would request a hearing pursuant to *Simmons v. United States*, 390 U.S. 377 (1968) to support our assertions. However, we must acknowledge the recent Sixth Circuit opinion in *United States v. Melvin Skinner*, 09-6497 (Decided August 14, 2012). In *Skinner*, the Sixth Circuit held that there is no Fourth Amendment violation in the interception of data given off the voluntary use of cell phones because one cannot have a reasonable expectation of privacy. In essence, the court concluded that if a tool used to transport contraband gives off a signal that can be tracked for location, the police can track the signal.
>
> 7. This motion is filed to preserve the issue in light of the possibility the United States Supreme Court decides to hear argument and issue a ruling on this Fourth Amendment argument.

[Record No. 146-1, p. 3]

**II.**

As Magistrate Judge Ingram has observed, "a Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001). However, in *United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012), *petition for cert. filed*, ___ U.S.L.W. ___, (U.S. Dec. 26, 2012) (No. 12-7971), the United States Court of Appeals for the Sixth Circuit determined that defendants do not have a reasonable expectation of privacy in date emanating from pay-as-you-go cellular telephones which can be used to show the location of the phone. Thus, the government did not violate the Defendant Skinner's Fourth Amendment rights when it obtained an order authorizing the telephone company to release subscriber information, cell site information, GPS real-time location, and "ping" data for the subject cell phone to learn of the defendant's location while he was en route to deliver drugs.[2] As Judge Rogers aptly summarized in *Skinner*,

> When criminals use modern technological devices to carry out criminal acts and to reduce the possibility of detection, they can hardly complain when the police take advantage of the inherent characteristics of those very devices to catch them. . . . The Constitution . . . does not protect [a defendant's] erroneous expectations regarding the undetectability of [his] modern tools.

*Id.* at 772.

---

[2] The United States correctly points out that, pursuant to *Skinner*, a search warrant based on probable cause is not necessary to obtain the type of GPS and location information sought and obtained in this case. A lesser standard is all that is required. However, in the present case, the United States sought and received a warrant for the subject telephones that was based on probable cause which included information obtained during the Title III wiretaps, physical surveillance conducted by the DEA on September 1, 2012, delivery of narcotics to Defendant Brock at his Bell County, Kentucky residence, and the traffic stop performed by the Corbin Police Department which identified at least two occupants of the vehicle.

Further, as Magistrate Judge Ingram correctly noted in his Recommended Disposition, the defendants have failed to provide any support for their contention that the warrant issued on September 28, 2012, was "fundamentally tainted" by inclusion of information gathered pursuant to properly-authorized wire intercepts. Likewise, they have failed to provide any information to support their claim that paragraph 14 of the supporting affidavit contained false information regarding Defendant Money's location in the vehicle during the September 1, 2012, traffic stop in Corbin, Kentucky. Review of the affidavit establishes that the individual located in the rear seat of the vehicle is referenced throughout the document by the name given to law enforcement at the time of the traffic stop: John Adams. (*See* Record No. 146-3; Affidavit of Douglas I. Carmack, ¶¶ 4, 10, 16, and 18.)

### III.

Under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), a defendant may challenge the sufficiency of a previously-issued and executed warrant by attacking the statements contained in the subject affidavit. However, to obtain a hearing, the defendant must make a substantial preliminary showing that a false statement was knowingly and intentionally included in the affidavit or that the subject statement was made with a reckless disregard for the truth. Additionally, the defendants must also demonstrate that removal of the allegedly false or recklessly-made statement would invalidate the warrant. *Id.* at 171-72. The defendant must identify the disputed portions of the challenged affidavit and must support his or her charges or falsity or recklessness with an offer of proof.

In the present case, the defendants' request for an evidentiary hearing is based upon assertions that the affidavit underlying the subject search warrant lacked probable cause to such an extent that the exception to the exclusionary rule set out in *United States v. Leon*, 468 U.S. 897 (1984), should not apply. Next, the defendant claim – without factual support – that the warrant is "fundamentally tainted" by the inclusion of information gathered pursuant to wire tap intercepts. However, there is simply no basis to require exclusion of information obtained as the result of a properly-issued Title III wiretap. And the defendants have provided no factual or legal basis to support a contrary conclusion.

Finally, the defendants assert that paragraph 14 of the affidavit underlying the search warrant contains "false allegations . . . that on September 1, 2012, [Defendant] Money was a rear seat passenger in a vehicle stopped by law enforcement in Corbin, Kentucky." But as noted by the Magistrate Judge, the defendants' assertions do not contain any substantive argument or discussion or facts to support their claim. Instead, the defendants acknowledge that their motion and accompanying arguments are intended to preserve the issues in the event the Supreme Court reverses or materially distinguishes the Sixth Circuit's recent opinion in *Skinner*, *supra.*

Based on the foregoing, this Court agrees with the United States Magistrate Judge that, under the circumstances, an evidentiary hearing is not necessary. The defendants have not met their burden under *Franks v. Delaware*, *supra*, and there are no factual issues to resolve. The statements in issue are not disputed and are neither misleading, false, nor reckless.

**IV.**

The defendants have no factual or legal basis to challenge the search warrant issued by the United State Magistrate Judge in the Eastern District of Michigan on September 28, 2012. And under recent Sixth Circuit authority, the defendants have no reasonable expectation of privacy in GPS or other similar types of data and location information for a cellular telephone that is being voluntarily used while traveling on public highways. Having conducted a *de novo* review of the issues raised by Defendants Money and Sledge in their Joint Motion to Suppress Evidence, it is hereby

**ORDERED** as follows:

1. The defendants' Joint Motion to Suppress Evidence and request for an evidentiary hearing [Record No. 146] are **DENIED**.

2. The Recommended Disposition of United States Magistrate Judge Hanly A. Ingram [Record No. 152] is **ADOPTED** and **INCORPORATED** herein by reference.

This 1st day of February, 2013.



Signed By:
*Danny C. Reeves* DCR
United States District Judge